## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **FLAGSTAR BANK, FSB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2010-0054** |
| | ) | |
| **JOSEPH NICHOLAS and** | ) | |
| **VENELYA NICHOLAS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————————— | ) | |

**Attorneys:**
**A. Jennings Stone, Esq.,**
St. Thomas, U.S.V.I.
       *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff Flagstar Bank, FSB ("Flagstar") against Defendants Joseph Nicholas and Venelya Nicholas (collectively, the "Nicholases") (Dkt. No. 20), and Flagstar's "Renewed Motion for Default Judgment," filed on October 25, 2013. (Dkt. No. 31). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment, as supplemented by its Renewed Motion for Default Judgment.

## BACKGROUND

On June 18, 2010, Flagstar filed a Complaint against the Nicholases, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). Flagstar asserts that the Nicholases defaulted on a Promissory Note and on a Mortgage regarding certain property ("the Property") described as:

> Plot No. 303 of Remainder Parcel 17 Vicorp Land -- Estate Jealousy, Prince Quarter, St. Croix, U.S. Virgin Islands, consisting of 0.369 US Acre, more or less, as more fully shown and described on OLG Drawing No. 5018, dated March 12, 1996, revised May 29, 1997.

(Compl. ¶ 6, Dkt. No. 1). The Complaint alleges that, on December 17, 2008, Joseph Nicholas executed and delivered to Flagstar a promissory note (the "Note"), which obligated him to pay the principal amount of $280,000.00, together with interest at a rate of 6.500% per annum, in consecutive monthly installments of $1,769.79 beginning February 1, 2009. *Id.* ¶¶ 7-8. To secure payment on the Note, the Nicholases granted to Flagstar and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Flagstar and its successors and assigns, a first priority mortgage dated December 17, 2008 over the Property (the "Mortgage"), which provided that the Nicholases would pay to Flagstar the payments due under the Note. *Id.* ¶¶ 9-10.

The Complaint further alleges that, on or about August 1, 2009, Joseph Nicholas defaulted under the terms and conditions of the Note, and that the Nicholases defaulted under the terms and conditions of the Mortgage, in that monthly installments of principal and interest became due and were not paid; that Flagstar gave notice of default to Joseph Nicholas by correspondence dated September 18, 2009, advising him that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien; and that, as of the date of the Complaint, the default had not been cured. *Id.* ¶¶ 11-15. On June 3, 2010, MERS assigned its entire interest in the Property to Flagstar (the "MERS Assignment"). *Id.* ¶ 16.

As to the debt cause of action, the Complaint provides that Joseph Nicholas owes Flagstar the sum of $277,936.22 in unpaid principal balance; accrued interest from September 1, 2009 to May 3, 2010 in the amount of $12,142.92; late charges in the amount of $1,164.06; escrow overdraft in the amount of $319.08; and a total amount due of $291,562.28. *Id.* ¶ 22. Flagstar further asserts that, under the terms of the Mortgage, it is entitled to be reimbursed for

any insurance premiums, taxes, or other charges that it pays with regard to the Property, and that under the terms of the Note and Mortgage, it is entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment of the Note or incidental to foreclosure of the Property. *Id.* ¶¶ 24, 25.

With regard to the foreclosure cause of action, the Complaint provides that Flagstar is the holder of the Mortgage, allowing it to maintain the foreclosure action; that the Nicholases are in default under the terms and conditions of the Note and Mortgage; and that Flagstar is entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from Joseph Nicholas. *Id.* ¶¶ 28-30.

The Nicholases were served personally with a copy of the Summons and Complaint on July 14, 2010. (Dkt. Nos. 4, 5). They have neither answered the Complaint nor appeared in this action. On March 22, 2011, Flagstar filed a Notice of Bankruptcy, informing the Court that the Nicholases had filed for bankruptcy protection. (Dkt. No. 8). The Court then designated this case as a suspense matter, and removed it from the active trial docket. (Dkt. No. 10).

In response to the Court's March 26, 2012 Order directing counsel to file a status report on this matter (Dkt. No. 11), Flagstar informed the Court that the Nicholases' bankruptcy had not been closed and the automatic bankruptcy stay remained in effect. (Dkt. No. 13). Flagstar further informed the Court that, under the confirmed Chapter 13 Plan, the Trustee would pay the loan arrears—and in fact Flagstar received a $29,634.83 arrearage payment from the Trustee. The Chapter 13 Plan also provided that the Nicholases would be responsible for regular monthly payments going forward, but no such payments from the Nicholases were made. *Id.*

On October 8, 2012, Flagstar notified the Court that the Bankruptcy Court had lifted the automatic stay on the Nicholases' bankruptcy (Dkt. No. 14), and the Court returned the case to

the active trial docket on October 11, 2012. (Dkt. No. 15). On October 23, 2012, Flagstar filed an Application for Entry of Default against the Nicholases. (Dkt. No. 17). The Clerk of Court entered default against both Defendants on October 24, 2012.  (Dkt. No. 19).

On February 8, 2013, Flagstar filed its Motion for Default Judgment (the "Motion") (Dkt. No. 20), along with a Memorandum in Support (Dkt. No. 21), an Affidavit of Indebtedness (Dkt. No. 22), and a Declaration of Counsel in Support of Motion for Default Judgment (Dkt. No. 23). In its Motion, Flagstar seeks: (1) a default judgment for debt against Joseph Nicholas for the entire amount due under the Note, plus expenses, interest, and attorney's fees; and (2) foreclosure against the Nicholases.

Flagstar argues that the procedural elements for default judgment have been satisfied because: the Nicholases were properly served with copies of the Summons and Complaint; the Clerk entered default against them; and they are not infants or incompetent persons, nor in the military service. (Dkt. No. 21 at 6). Flagstar further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that Joseph Nicholas executed the Note and the Nicholases executed the Mortgage; Flagstar has possession of the original Note and is holder of the Mortgage in its own right and by way of the MERS Assignment; Joseph Nicholas defaulted under the terms of the Note and the Nicholases have defaulted under the terms of the Mortgage; Flagstar gave Joseph Nicholas proper notice of the default and he failed to cure that default; and Flagstar elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* In addition, Flagstar asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 7-10.

4

In support of the Motion, Plaintiff filed an Affidavit of Indebtedness, signed by Vanessa Ellison, a Flagstar Foreclosure Analyst, who explained how the Bank's document management system keeps track, and maintains records, of debit and credit transactions related to the Mortgage and original Note. (Dkt. No. 22 ¶¶ 3-8). The Affidavit sets forth the amounts due and owing through October 31, 2012: $274,668.39 in unpaid principal balance; interest from September 1, 2010 through October 31, 2012 of $38,662.15; escrow advances of $10,956.28; accumulated late charges of $2,756.88; recoverable corporate balance of $5,342.46; and a total amount due of $332,386.16. *Id.* ¶ 10. Ms. Ellison asserts that interest accrues at the per diem rate of $48.91. *Id.* ¶ 11.

In the Declaration of Counsel in Support of the Motion, A. Jennings Stone, Esq. averred that his office investigated whether the Nicholases were in the military service by conducting searches on the Department of Defense Manpower Data Center website on February 1, 2013. That research revealed that the Nicholases were not in the military service as defined in the Servicemember's Civil Relief Act of 2003, 50 App. U.S.C. § 521. (Dkt. No. 23, ¶¶ 4-7, Dkt. No. 23-1). Attorney Stone further declared that, "upon information and belief after reasonable inquiry, I am informed and do believe that the Nicholases are neither minors nor incompetent." *Id.* ¶ 8.

On September 17, 2013, the Court ordered Flagstar to file a supplemental affidavit that would explain, with specificity: (1) the computation of late charges; (2) the components of the $10,956.28 in escrow advances, and whether that sum included $319.08 in "escrow overdraft"; (3) what constitutes the recoverable corporate balance of $5,342.46; and (4) whether attorney's fees are included in the recoverable corporate balance. (Dkt. No. 25). In addition, the Court ordered Flagstar to explain whether the $29,634.83 arrearage that was due to Flagstar from the

5

Chapter 13 Trustee was in fact paid, and to bring all amounts due current as of the date of filing. *Id.*

On October 25, 2013, Flagstar filed a "Renewed Motion for Default Judgment" (Dkt. No. 31), along with a Memorandum of Law in Support of the Renewed Motion for Default Judgment (Dkt. No. 32); a Second Affidavit of Indebtedness (Dkt. No. 33); and a Declaration of Counsel in Support of Costs and Attorney's Fees (Dkt. No. 34). In its Memorandum of Law, Flagstar explained that, under the provisions of the Nicholases' Chapter 13 Plan, Flagstar was to receive a $38,933.00 arrearage payment from the Trustee, and Joseph Nicholas would make monthly payments to Flagstar of $765.00. (Dkt. No. 32, ¶ 10; Dkt. No. 32-3). On October 20, 2011, Flagstar received a $29,417.96 arrearage payment from the Trustee and, on October 31, 2011, a $216.87 arrearage payment, totaling $29,634.83. (Dkt. No. 32, ¶ 13). According to Jessica Strong, a Flagstar Foreclosure Analyst who signed the Second Affidavit of Indebtedness, these amounts brought the Nicholases' loan current through October 1, 2010 but did not cure the default or reinstate the loan. (Dkt. No. 33, ¶ 9). Ms. Strong averred that Joseph Nicholas failed to make any further monthly payments as agreed under the Chapter 13 Plan. *Id.* Consequently, Flagstar sought relief from the automatic stay to continue the foreclosure proceedings, and the Bankruptcy Court terminated the stay. (Dkt. No. 32, ¶¶ 14, 15). The Bankruptcy Court also granted Flagstar $3,787.50 in compensable attorney's fees. (Dkt. No. 32-4). The bankruptcy case was closed without a discharge due to the Nicholases' failure to abide by the terms of the Plan. (Dkt. No. 32-5). The default has not been cured to date. (Dkt. No. 32, ¶ 17).

The Second Affidavit of Indebtedness provides that, as of September 30, 2013, the following amounts remain due and owing to Flagstar by Joseph Nicholas: $274,668.39 in unpaid principal balance; $54,978.93 in interest from September 1, 2010 through September 30, 2013;

$17,934.86 in escrow advances; $3,730.27 in accumulated late charges; and $259.50 for inspections or other property preservation fees and charges; for a combined total of $351,571.95. (Dkt. No. 33, ¶¶ 10-13). The Second Affidavit of Indebtedness also explained how Flagstar calculated its late fees (Dkt. No 33, ¶ 11); what charges were included in the escrow advances (property taxes, hazard insurance) (Dkt. No. 33-4); and what charges were included in the corporate advances (inspection fees, appraisals). (Dkt. No. 33-6).

In the Declaration of Counsel in Support of Costs and Attorney's Fees, Flagstar's counsel, A. Jennings Stone, Esq., averred that he, as a Senior Associate, and Nycole Thompson, as an Associate, billed $250.00 per hour on this matter, and that Carol Hart, a paralegal, billed $125.00 per hour. (Dkt. No. 34). He attached a memorandum of costs showing that the total time spent on this matter was 29.80 hours through October 25, 2013, that the total amount of attorney's fees incurred was $7,181.25, and the total amount of costs expended was $877.64. *Id.* & Dkt. No. 34-1.

## APPLICABLE LEGAL PRINCIPLES

In an application for an entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however, are not deemed admitted, nor are the extent and amount of damages claimed by a party. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

7

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## ANALYSIS

### A. Default Judgment

Flagstar has satisfied all of the requirements necessary to obtain a default judgment against the Nicholases. It has shown that: (1) default was entered against the Nicholases by the Clerk of Court (Dkt. No. 19); (2) the Nicholases have not appeared; (3) the Nicholases are neither infants nor incompetent persons (Dkt. No. 23, ¶ 8; Dkt. No. 33, ¶ 16); and (4) the Nicholases were validly served with process. (Dkt. Nos. 4, 5). In addition, Flagstar provided copies of two Military Status Reports from the Department of Defense Manpower Data Center showing that the Nicholases are not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. Nos. 23-1, 33-8). Flagstar has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 33).

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to Flagstar resulting from the Nicholases' breach of their contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, the Nicholases' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Consequently, default judgment is appropriate.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b). Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 33-1, ¶ 6(E); Dkt. No. 33-2, ¶ 19). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees.

9

First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J.*, *Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Flagstar seeks $7,181.25 in attorney's fees as compensation for 29.80 hours of work billed in this matter. However, the Court finds that 29.80 hours billed for legal work in this case is excessive and therefore unreasonable. This matter involves "run-of-the-mill debt and foreclosure claims, and was disposed of at the [default judgment] stage. The issues were not novel, but, rather, relatively commonplace." *Firstbank Puerto Rico v. Caribbean Island Adventure, Inc.*, 2008 WL 783537, at *2 (D.V.I. Mar. 20, 2008). Attorney's fee awards in such matters have been significantly less than requested here.[1] While the Court recognizes that Defendants Joseph and Venelya Nicholas filed for bankruptcy protection, their detour through bankruptcy does not account for the disparity in requested attorney's fees. Indeed, the

---

[1] *See, e.g., Flagstar Bank, FSB v. Pemberton ex rel. Pemberton*, 2010 WL 2643378, at *2 (D.V.I. June 30, 2010) ("Moreover, having already awarded over $5,000 in attorney's fees and costs to Plaintiff in this unopposed foreclosure matter, the Court finds that an additional $1,233.67 would not be reasonable."); *FirstBank P.R. v. Connor*, 2009 WL 2515729 at *2 (D.V.I. Aug. 11, 2009) (awarding only $1,000 of $6,490.50 attorney's fee request because "this matter involved garden-variety debt and foreclosure claims and was disposed of at the default judgment stage."); *Banco Popular de P.R. v. Carew*, 2009 WL 2413675, at *2 (D.V.I. Aug. 3, 2009) (awarding only $1,000 of $3,506.30 attorney's fee request for "run-of-the-mill debt and foreclosure claims [that were] disposed of at the default judgment stage, obviously without opposition from either of the Defendants.").

Bankruptcy Court awarded compensable attorney's fees of $3,787.50—a separate amount from the attorney's fees requested in this foreclosure proceeding.

The Court has identified a number of billing entries that have contributed to the relatively high attorney's fees request in this case. For example, the Court ordered Flagstar to supplement its Motion for Default Judgment because its initial filing did not explain in sufficient detail the basis of certain costs for which it was seeking reimbursement. (Dkt. No. 25). *See, e.g., Blythe v. Marauder Corp.,* 2010 WL 3609789, at *2 (D.N.J. Sept. 16, 2010) (denying motion for default judgment without prejudice in part because "the motion for default judgment fails to adequately detail the basis for the calculation of the damages sought."). As a result of the inadequacy of Plaintiff's initial Motion, counsel spent a total of seventeen and one-half hours on its request for a Default Judgment: four and one-half hours drafting the initial Motion, and approximately thirteen hours on accumulating information and drafting the Renewed Motion for Default Judgment. In run-of-the-mill default judgment foreclosure cases, this Court has approved $3.337.50 in attorney's fees where counsel spent a total of 13.85 hours on the entire case, including fewer than three hours drafting and filing the Motion for Default Judgment. *See, e.g., Nationstar Mortgage, LLC v. Wilcox,* 2013 WL 3376719, at *5 (D.V.I. July 5, 2013); *see also Flagstar Bank, FSB v. Toronto,* 2013 WL 2402620, at *3 (D.V.I. June 3, 2013) (awarding $2,175.00 in attorney's fees for 8.80 hours spent working on the case, including under three hours drafting and filing the Motion for Default Judgment). In the Court's view, seventeen and one-half hours is an excessive—and therefore unreasonable—amount of time to bill for a Motion for Default Judgment in a routine foreclosure matter.

In addition, Flagstar filed two motions for extensions of time to file the supplemental documentation. The entries in the attorney's billing memorandum indicate that these motions

were necessitated by Flagstar's delay in providing its counsel with the additional documentation required by the Court. Plaintiff's counsel, for example, spent one and one-quarter hours, at $250.00 per hour, following up with Flagstar multiple times to elicit the loan history that was to be included in the supplemental filing. In the Court's view, it is not reasonable to require Defendants to underwrite the Bank's tardiness in responding to the Court Order, which resulted in additional legal work (two motions for extension of time, billed at one and three-quarter hours) and multiple billing entries where counsel repeatedly requested the material. In addition, it does not seem reasonable that upwards of five hours should have been necessary to draft and finalize the Second Affidavit of Indebtedness.[2]

With regard to the second step of assessing the reasonableness of attorney's fees—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). The Court therefore concludes that the $250.00 per hour rate charged by Flagstar's attorneys is reasonable and falls within the scope of rates for such services. (Dkt. No. 34).

---

[2] The precise amount of time spent on drafting the Second Affidavit of Indebtedness cannot be ascertained because, in some instances, multiple tasks were bundled together in one entry. For example, the September 19, 2013 entry provides: "Review court order requiring further documentation of borrower indebtedness. Request supporting documents from client. Begin drafting revised [Affidavit of Indebtedness] and possible renewed motion for default judgment" for a total of three-quarters of an hour. (Dkt. No. 34-1 at 2). An entry on October 24, 2013 provides: "Review new loan history. Phone call with Jessica Strong at Flagstar regarding a more detailed breakdown of escrow amounts. Revised Second Affidavit of Indebtedness to incorporate same" for a total of two hours. As a consequence, when the Court attempted to determine how much time counsel spent on drafting the Second Affidavit of Indebtedness, in order to establish whether that time was reasonable, it did not have the raw data to do so. *See Charlery v. STX Rx, Inc.,* 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.").

In view of the foregoing, the Court will reduce the 29.80 hours of work reflected in the billing entries by ten hours to account for: the excessive time billed in drafting the Motion for Default Judgment, supplemented by the Renewed Motion for Default Judgment, including the Second Affidavit of Indebtedness; the two motions for extension of time; the billing entries where counsel had to request information from Plaintiff numerous times in response to the September 2013 Court Order; and the bundling together of tasks in one entry. *See, e.g., Bank of Nova Scotia v. Abdallah,* 2013 WL 1846544, at *8 (D.V.I. May 2, 2013) (allowing 24% of attorney's fees and costs in foreclosure case); *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co., Ltd.,* 754 F. Supp. 459, 464 (D.V.I. 1991) (reducing excessive attorney's fees by 20%); *Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205 (3d Cir. 1969) (allowing 7.5% of requested attorney's fees in mortgage foreclosure case). The Court will therefore allow $4,681.25 in attorney's fees.

With regard to costs, under the terms of the Mortgage, the Nicholases agreed to "pay[] all expenses incurred in enforcing this Security Instrument. . ." (Dkt. No. 33-2, ¶ 19). The Court infers that in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). The Bank is seeking reimbursement of $877.64 for the following costs: title search, recording fees, on-line search on Accurint (People/Business search), filing fees for Motion for Relief from Stay, messenger service, postage, and process server. (Dkt. No. 34-1 at 3-4). The Court finds that these costs are

13

reasonable, and—pursuant to the plain language of the Mortgage contract—will award costs in the amount of $877.64.

## **CONCLUSION**

Flagstar has satisfied the requirements necessary for entry of a default judgment against Joseph Nicholas and Venelya Nicholas. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 20), as supplemented by its Renewed Motion for Default Judgment (Dkt. No. 31), will be granted.  The Court will award a total of $5,558.89 in attorney's fees and costs.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: January 9, 2014                          _____/s/_____
                                               WILMA A. LEWIS
                                               Chief Judge

14